Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | **02 C 5633** | **DATE** | Feb. 7, 2003 |
| **CASE TITLE** | DaimlerChrysler v North Chicago Marketing, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ Jury trial
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Memorandum opinion and order entered. Accordingly, plaintiff's motion to dismiss North Chicago Marketing Inc.'s counterclaim is denied. Plaintiff's motion to dismiss Richard Sullivan's counterclaim is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| X | Notices mailed by judge's staff. | FEB 11 2003 date docketed | 41 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| GDS | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAIMLERCHRYSLER SERVICES NORTH AMERICA, LLC, )<br>)<br>Plaintiff/Counter Defendant, )<br>)<br>v. )<br>)<br>NORTH CHICAGO MARKETING, INC., and )<br>RICHARD J. SULLIVAN, )<br>)<br>Defendants/Counter Plaintiffs. )<br>_____ )<br>)<br>RICHARD J. SULLIVAN, )<br>)<br>Third Party Plaintiff, )<br>)<br>v. )<br>)<br>WILLIAM CALLAS NAZHA, )<br>)<br>Third Party Defendant. ) | No. 02 C 5633<br><br>Judge Robert W. Gettleman<br><br>**DOCKETED**<br><br>FEB 1 1 2003 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daimlerchrysler Services North America LLC has sued defendants North Chicago Marketing, Inc. ("Chicago Marketing") and Richard J. Sullivan, alleging breach of a security agreement ("Floor Plan Financing Agreement") and a promissory note by Chicago Marketing, and breach of a personal guaranty by Sullivan. Chicago Marketing has counterclaimed, alleging fraud in the inducement and, in the alternative, negligent misrepresentation. Sullivan has also counterclaimed, alleging fraud in the execution and negligent misrepresentation. Plaintiff has moved to dismiss both counterclaims for failure to

state a claim upon which relief may be granted. For the reasons set forth below, the motion is denied as to Chicago Marketing and granted as to Sullivan.

## FACTS

According to the counterclaims,[1] until 1999 Sullivan was an automobile salesman. In January 1999, William Nazha, who owned and operated a number of motor vehicle dealerships that sold new vehicles including Chryslers, approached Sullivan and proposed that they enter into a joint venture to establish and operate a used vehicle dealership. Pursuant to that agreement, they formed and incorporated Chicago Marketing. Nazha was to obtain financing for the joint venture, use his connections with Chrysler to procure and maintain the financing necessary for Chicago Marketing to purchase used vehicles for resale to the public ("Floor Plan Financing"), and to provide financing to consumers who did not otherwise qualify for financing ("Consumer Financing"). Sullivan was to organize and run the day-to-day operations of the dealership. Sullivan became President of Chicago Marketing. Nazha was never made a corporate officer.

After Chicago Marketing was incorporated, Nazha told Sullivan that he had obtained Floor Plan Financing. He also told Sullivan that it was important for Chicago Marketing to be successful because Nazha would be personally liable for the Floor Plan Financing.

On April 7, 2000, Brian Zandstra, a representative of plaintiff, went to Chicago Marketing's office and instructed Sullivan to sign various documents relating to the Floor Plan Financing. At that time, for the purpose of inducing Sullivan to sign the documents, Zandstra made the following misrepresentations:

---

[1]For purposes of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court accepts as true the well plead factual allegations of the counterclaims. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

2

(a) the Floor Plan Financing documents were merely a corporate promissory note;

(b) Nazha had already approved of the Floor Plan Financing documents and would be signing the Floor Plan Financing documents at Chrysler's office later that same day;

(c) Nazha would be personally liable if anything went wrong; and

(d) the only reason Chrysler was having Sullivan sign the Floor Plan Financing documents on behalf of Chicago Marketing was because Nazha was not a corporate officer and therefore could not technically sign on behalf of Chicago Marketing.

Based on these representations, Sullivan signed the documents without reading them. He signed a "Security Agreement and Master Credit Agreement" (the Floor Plan Financing Agreement) and a promissory note on behalf of and as president of Chicago Marketing. He also signed a "Continuing Guaranty" personally. Chicago Marketing began business and began making payments to plaintiff.

On or about May 20, 2002, Sullivan called Zandstra to discuss certain new procedures plaintiff had implemented regarding both Consumer Financing and Floor Plan Financing. Zandstra told Sullivan that the Chicago Marketing Floor Plan Financing had been cancelled and that notice had been sent to Nazha. According to Zandstra, the financing had been cancelled because Nazha had failed to sign the Floor Plan Financing documents. After several attempts, Sullivan contacted Nazha on May 30, 2002, and was told that Nazha had not signed the documents. On June 7, 2002, Sullivan asked Nazha to sign the documents but Nazha refused.

## DISCUSSION

Chicago Marketing alleges that it was fraudulently induced to enter into the Floor Plan Financing Agreement and Promissory Note. To state a claim for fraudulent inducement, Chicago

3

Marketing must allege that: (1) plaintiff made false representations of material fact; (2) plaintiff knew or believed the representation was false at the time of its making; (3) plaintiff made the misrepresentation for the purpose of inducing Chicago Marketing to act; (4) Chicago Marketing did so act; (5) Chicago Marketing had a reasonable belief in and relied on the misrepresentation to its detriment; (6) the misrepresentation damaged Chicago Marketing. Regensburger v. China Adoption Consultants, Ltd., 138 F.3d 1201, 1207 (7th Cir. 1998).

Plaintiff generally concedes that Chicago Marketing has alleged each of these elements.[2] Instead, plaintiff argues that the counterclaim fails to state a claim because the allegations do not constitute actionable misrepresentations of past or existing fact, but rather are representations concerning future contractual performance which cannot give rise to a fraud claim. See, e.g., McDonald v. McDonald, 408 Ill. 388, 394 (1951). This is incorrect. Chicago Marketing alleges that plaintiff told it that Nazha had reviewed and approved the documents and had agreed to sign them and become personally liable. Those are statements of existing or past fact. Chicago Marketing alleges that absent those misrepresentations, it would not have signed the documents without reviewing them first. That is sufficient to state a claim for fraudulent inducement. True, Chicago Marketing is unhappy with Nazha for failing to do what he had told Sullivan he would do, but it is plaintiff's misrepresentation that Nazha had approved the documents that allegedly caused Chicago Marketing to execute the documents without reviewing them first.

---

[2]Plaintiff does state in a footnote that Chicago Marketing has not alleged that plaintiff made the alleged misrepresentation for the purpose of inducing Chicago Marketing to act. This statement is incorrect. Paragraph 16 of the counterclaim specifically alleges that the misrepresentations were made to induce Sullivan to sign the Floor Plan Financing documents.

4

Plaintiff also argues that the fraudulent inducement claim fails because Chicago Marketing had the opportunity to review the documents and discover the alleged fraud. "[A]s long as the complaining party could have discovered the fraud by reading the contract and had the opportunity to do so, Illinois courts have refused the extend the doctrine of fraudulent inducement to invalidate contracts." Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc., 250 F.3d 570, 573 (7th Cir. 2001). The key is whether the fraud could be discovered simply by reading the documents because "reliance on precontractual fraud statements is precluded as unreasonable only where the contract flatly contradicts them." Chicago Printing Co. v. Heidelberg USA, Inc., 2001 WL 1134862 at *5 (N.D. Ill. 2001). In the instant case, nothing in the contract documents contradicts, flatly or otherwise, the alleged misrepresentation that Nazha had already approved the documents and had agreed to become personally liable. It is true that there is no space on the corporate documents for Nazha to sign, but he was not a corporate officer. It is also true that there was no "Continuing guaranty" for Nazha among the papers given to Sullivan, but it is entirely possible that Nazha had been given and approved a guaranty form with his name on it. Because such a guaranty would be a personal obligation rather than a corporate obligation, there would be no need for it to be given to Sullivan. Accordingly, the court concludes that the contract documents do not automatically negate the element of reasonable reliance. Because Chicago Marketing's counterclaim alleges actionable misrepresentations that would not have been revealed by reading the contract, plaintiff's motion to dismiss Chicago Marketing's counterclaim is denied.

Sullivan's counterclaim alleges fraud in the execution of the "Continuing Guaranty." Fraud in the inducement occurs when (as alleged by Chicago Marketing) "fraud induces a party

5

to assent to a commitment that the party understands, but to which the party would not otherwise have assented; the promisor knows what it is signing but its assent is induced by fraud." In contrast, fraud in the execution "entails deceiving a party to an agreement as to the very nature of the instrument it signs so that the party 'actually does not know what he is signing, or does not intend to enter a contract at all.'" Laborers' Pension Fund v. A&C Environmental, Inc., 301 F.3d 768, 779 (7th Cir. 2002) (citations omitted). Sullivan alleges that plaintiff told him that all of the documents he was signing were corporate documents creating corporate obligations, and that he had no intent to and did not know that he was binding himself personally.

Unlike Chicago Marketing's claim, Sullivan's claim is "flatly contradicted" by the contract documents. The Floor Plan Financing Agreement and Promissory Note both indicate that they are entered into between plaintiff and Chicago Marketing, both required the president of Chicago Marketing to sign, and Sullivan did sign both as "Pres." In contrast, the continuing guarantee indicates that it is entered into personally. Sullivan's name, social security number and address are typed in as the "undersigned" and he then printed his name, signed his name in cursive and wrote in his social security number. Importantly, after signing his name in cursive, he did not add "Pres" as he did on the other two documents. Because the document flatly contradicts the alleged misrepresentation, Sullivan cannot justifiable rely on that misrepresentation. Cozzi, 250 F.3d at 573. Therefore, he fails to state a claim for fraud in the execution.[3]

---

[3]Sullivan's alternate claim for negligent misrepresentation also requires reasonable reliance on the alleged misrepresentation and thus fails for the same reason. Quinn v. McGraw-Hill Companies, Inc., 168 F.3d 331, 335 (7th Cir. 1998).

## CONCLUSION

For the reasons set forth above, plaintiff's motion to dismiss North Chicago Marketing, Inc.'s counterclaim is denied. Plaintiff's motion to dismiss Richard Sullivan's counterclaim is granted.

**ENTER:** February 7, 2003

_____
**Robert W. Gettleman**
**United States District Judge**