# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 5633 | DATE | April 2, 2004 |
| CASE TITLE | DaimlerChrysler Services v North Chicago Marketing | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Memorandum opinion and order entered. Plaintiff's motion for summary judgment on counts I through III against North Chicago is granted. Presentation of plaintiff's proposed judgment order is set for 4/8/04, at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | APR 0 6 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | | 15 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS courtroom deputy's initials | | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAIMLERCHRYSLER SERVICES NORTH AMERICA, LLC, | ) ) ) |
| Plaintiff/Counter Defendant, | ) ) |
| v. | ) No. 02 C 5633 ) |
| NORTH CHICAGO MARKETING, INC., and RICHARD J. SULLIVAN, | ) Judge Robert W. Gettleman ) ) ) |
| Defendants/Counter Plaintiffs. | ) ) |
| RICHARD J. SULLIVAN, | ) ) |
| Third Party Plaintiff, | ) ) |
| v. | ) ) |
| WILLIAM CALLAS NAZHA, | ) ) |
| Third Party Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daimlerchrysler Services North America LLC has brought a seven count second amended complaint against defendants North Chicago Marketing Inc. ("North Chicago"), Richard J. Sullivan, Laura Sullivan, R.S. Auto Brokers, Inc., and R.S. Auto Associates, Inc., alleging breach of contract, action on account, and breach of a promissory note (Counts I through III); breach of a personal guaranty against Sullivan (Count IV); conversion against North Chicago and Sullivan (Count V); and fraudulent transfer against North Chicago, Sullivan, Laura Sullivan, R.S. Auto Brokers and R.S. Auto Associates (Count VI and VII), all arising out of North Chicago's breach of a security agreement ("Floor Plan Financing Agreement"). Plaintiff has

moved for summary judgment on Counts I through III against North Chicago. For the reasons set forth below the motion is granted.

## PROCEDURAL HISTORY/FACTS

This action began as a simple suit by plaintiff to collect a loan it made to North Chicago and a personal guaranty of that loan by Richard Sullivan, the President of North Chicago. Both North Chicago and Sullivan answered and counterclaimed. North Chicago claimed that the loan documents were secured through fraudulent inducement, and Sullivan claimed fraud in the execution or in the alternative negligent misrepresentation. On February 7, 2003, plaintiff's motion to dismiss the counterclaims was denied as to North Chicago but granted as to Sullivan. Daimlerchrysler Services North America, LLC v. North Chicago Marketing, Inc., No. 02 C 5633 (N.D. Ill. Feb. 7, 2003). On February 18, 2003, both North Chicago and Sullivan filed separate Chapter 7 Bankruptcy Petitions. North Chicago's bankruptcy trustee reported no assets and the North Chicago bankruptcy was dismissed.

Plaintiff filed an adversary proceeding in Sullivan's bankruptcy seeking a money judgment from Sullivan on his guaranty, a determination that the judgment is non-dischargable under 11 U.S.C. § 523, and a denial of discharge of Sullivan's debts. Sullivan counterclaimed raising fraudulent inducement.

Defendants Laura Sullivan ("Laura") and R.S. Auto Associates, Inc. ("R.S. Associates") were added as defendants in plaintiff's second amended complaint. Sullivan, Laura, and R.S. Associates moved to dismiss or for abstention. To resolve that motion the court withdrew the reference of the adversary proceeding. Sullivan, Laura and R.S. Associates have indicated an

2

intent to answer, raise affirmative defenses and file counterclaims based on an affidavit filed by Sullivan in response to plaintiff's motion for summary judgment against North Chicago.[1]

According to that affidavit, Sullivan formed a joint venture (North Chicago) with William Nazha to create and operate a used car dealership. Nazha arranged for financing, and Sullivan was to manage the day-to-day operations. Sullivan was the president. Nazha was not a corporate officer.

After North Chicago was incorporated, Nazha told Sullivan that plaintiff would provide "Floor Plan Financing." On April 7, 2000, Brian Zandstra, a representative of plaintiff, arrived unannounced at North Chicago with a stack of documents for Sullivan to sign. Sullivan initially told Zandstra that he did not want to sign and tried to reach Nazha by telephone. Zandstra then told Sullivan that Sullivan (and not Nazha) needed to sign because Sullivan was the President of North Chicago and Nazha could not sign on behalf of the corporation. He then told Sullivan that the documents "were part of a corporate promissory note," that "Nazha had already approved the papers and agreed to sign them and his personal guaranty, and that Zandstra was meeting with Nazha in plaintiff's office that afternoon." Zandstra assured Sullivan that "Nazha would be personally liable if anything went wrong with the Floor Plan Financing" and that the Floor Plan Financing would open as soon as Nazha "completed the transaction" with plaintiff. Based on these representations Sullivan signed the documents without reading them.

---

[1] Because of lack of assets, North Chicago has not answered the second amended complaint. Sullivan, Laura, and R.S. Associates have filed a brief and L.R. 56.1 Statement in opposition to plaintiff's motion for summary judgment against North Chicago. North Chicago has adopted those pleadings as its own. The court rejects plaintiff's argument that there is anything improper in North Chicago's adoption of the other defendants' pleading.

3

Sullivan asked for copies of the documents he had signed. Zandstra copied the corporate note and two riders, gave them to Sullivan and promised to send the remaining documents "after Bill [Nazha] signed the at [plaintiff's] office and the deal was complete.

It is undisputed that Nazha never signed the loan documents or any guaranty of the loan. There is no evidence that plaintiff had ever even prepared a personal guaranty for Nazha to sign. Plaintiff opened the floor plan despite Nazha's refusal to lend his credit to the transaction.

## DISCUSSION

To recover on a promissory note, plaintiff must show that: (1) North Chicago executed the security agreement and promissory note; (2) plaintiff is the holder of the note; and (3) North Chicago has no viable defense. See Basu v. Stelle, 237 Ill. App.3d 113, 115-16 (2d Dist 1992). To prevail on its breach of contract claim, plaintiff must establish: (1) the existence of a valid and enforceable contract; (2) performance by plaintiff; (3) breach of the contract by North Chicago; and (4) resulting injury to plaintiff. Gallagher Corp. v. Russ, 309 Ill.App.3d 192, 199 (1st Dist. 1999)

In the instant case, it is undisputed that Sullivan, acting on behalf of North Chicago, executed the security agreement and promissory note, that plaintiff is the holder of the note and performed its obligations, that North Chicago has failed to pay on the note, and plaintiff has been injured. North Chicago argues that it was fraudulently induced to execute the documents, however, challenging plaintiff's ability to establish the third element of the promissory note count (no viable defense) and the first element of the breach of contract count ( a valid and enforceable contract).

4

In response, plaintiff argues that even if all of Sullivan's factual assertions are accepted as true, North Chicago's fraudulent inducement defense is barred by the Illinois Credit Agreement Act ("ICAA"), 815 ILCS 160/2, 3, which bars all actions by a debtor based on or related to an oral credit agreement.[2] First National Bank in Staunton v. McBride Chevrolet, Inc., 267 Ill. App.3d at 367 (4th Dist. 1994).

The ICAA has been described by the Seventh Circuit as a "strong form" of the Statute of Frauds because, unlike the usual Statute of Frauds, it requires that the agreement be signed by both parties. See Resolution Trust Corp. v. Thompson, 989 F.2d 942, 944 (7th Cir. 1995). Sections 2 and 3 of the ICAA, 815 ILCS 160/2 provide:

> § 2. **Credit Agreements to be in writing.** A debtor may not maintain an action on or in any way related to a credit agreement unless the agreement or commitment to lend money or extend credit or delay or forebear repayment of money sets forth the relevant terms and conditions, and assigned by the creditor and the debtor.
>
> § 3. **Actions not considered agreements.** The following actions do not give rise to a claim, counterclaim, or defense by a debtor that a new credit agreement is created, unless the agreement satisfies the requirements of Section 2:
>
> * * * * * * *
>
> (3) the agreement by a creditor to modify or amend an existing credit agreement or to otherwise take certain actions, such as entering into a new credit agreement, forebearing from exercising remedies in connection with an existing credit agreement, or rescheduling or extending installments due under an existing credit agreement.

A credit agreement is defined as "an agreement or commitment by a creditor to lend money or extend credit or delay or forebear repayment of money . . . ." As noted by Judge Coar

---

[2] Plaintiff did not raise the ICAA as an issue in its previously filed motion to dismiss North Chicago's and Sullivan's counterclaims.

in Westinghouse Electric Corp. v. McLean, 938 F. Supp. 487, 492 (N.D. Ill. 1996), the legislature concluded that "justice was best served by putting all parties to covered transactions on notice that the agreement will be enforced as written. Winks and nods and whispered promises to deviate therefrom would not be enforced."

A wink and a nod promise is precisely what North Chicago attempts to argue, although cast in fraudulent inducement terms. That characterization aside, however, North Chicago is attempting to enforce an oral promise by Zandstra that despite the execution of the corporate agreement, no enforceable contract would exist until Nazha signed the personal guaranty. The documents executed by Sullivan do not so indicate, and the personal guaranty that he signed is plainly marked as such.

North Chicago argues that such an interpretation would prevent any claim of fraudulent inducement, and would be in direct conflict with the Promissory Note and Bank Holiday Act, 815 ILCS 105/10, which provides that "if any fraud or circumvention be used in obtaining the making or execution of a [promissory note] such fraud or circumvention may be pleaded in bar to any action to be brought on any such instrument so obtained, whether such action be brought by the party committing such fraud or circumvention, or any assignee of such instrument." As noted in Bezely v. Scarl, 230 Ill. App. 393, 1923 WL 3324 at *3 (2nd Dist. 1923), "the fraud referred to in this section, which will avoid a note in the hands of an assignee, must relate to the execution of the note, and not to the consideration of the note." Fraud in the execution of the note cannot be used to avoid the obligation unless the maker was induced to sign a note prejudicially different from the instrument he was willing to sign, and which he thought he was signing. Thus, for purposes of this section, the fraud and circumvention must consist of some trick or device

that induced the making of one kind of an instrument under the belief that the maker was giving one of a different character. Id.

This court has already rejected any fraud in the execution theory in this case. Daimlerchrysler Services North America, LLC v. North Chicago Marketing, Inc., No. 02 C 5633 (N.D. Ill. Feb. 7, 2003). The documents are clearly labeled to be exactly what they are. Any attempt to enforce an alleged statement by Zandstra that the corporate contract would not be valid and enforceable until Nazha personally guaranteed is nothing but a disguised attempt to enforce an oral promise to forebear enforcement until Nazha signed. Such a claim is precisely what the ICAA was enacted to foreclose. See Bank One, Springfield v. Roscetti, 309 Ill.App.3d 1048, 1056-58 (4th Dist. 1999) (personal guaranty of floor plan financing agreement is a credit agreement under the ICAA, and any alleged oral promise to not enforce or to modify the terms is barred by the ICAA).

No doubt North Chicago and its principals will find this result to be harsh and distressing in light of their insistence that North Chicago was fraudulently induced to sign the documents by a promise that Nazha would be personally liable "if anything went wrong with the "Floor Plan Financing." To quote Judge Coar in Westinghouse, 993 F. Supp. at 489, however, "Illinois courts have concluded that they must apply the [ICAA] even in the face of harsh consequences." Plaintiff's motion for summary judgment for liability on Counts I through III against North Chicago is granted.

## CONCLUSION

For the reasons set forth above plaintiff's motion for summary judgment on Counts I through III against North Chicago is granted. Plaintiff is directed to present a draft judgment

7

order for presentation to the court on April 8, 2004, at 9:30 a.m., computing interest through that date.

ENTER:     April 2, 2004

_____
Robert W. Gettleman
United States District Judge